UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD ROBINSON,

        Plaintiff,                    CIVIL ACTION NO. 05-74384

       v.                               DISTRICT JUDGE DENISE PAGE HOOD

JO ANNE B. BARNHART,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

    This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that plaintiff's motion be **GRANTED IN PART AND DENIED IN PART**, that the Commissioner's motion be **GRANTED IN PART AND DENIED IN PART**, and that the matter be **REMANDED** to the Commissioner for further proceedings.

### II. Background

    On May 29, 2001, plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that he was disabled due to an enlarged heart, cardiomyopathy, and high blood pressure, with an onset date of December 2,

2000.[1]  (Tr. 35-37, 39, 349-51).  Plaintiff was 41 years of age when he filed the applications.  He has a general equivalence diploma (GED), with a work history including employment as a bus driver, a carpenter, and a press operator.  (Tr. 40, 45, 52-55).

The Social Security Administration (SSA) denied plaintiff's applications on March 13, 2002.  (Tr. 26-30, 352-56).  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 31).  The hearing was held on February 10, 2004, before ALJ Peter Americanos.  (Tr. 361-88).  Plaintiff, represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from a vocational expert (VE).

On January 27, 2005, the ALJ issued a decision denying plaintiff's claims.  (Tr. 9-24).  The ALJ determined that plaintiff had congestive heart failure with mitral valve replacement, right femoral neuropathy, and obesity, and that his impairments were "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), but that he did not have an impairment that met or medically equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  The ALJ further determined that plaintiff retained the ability to perform a range of sedentary work and that there were a significant number of

---

[1]Plaintiff later amended his onset date to May 11, 2001.  (Tr. 367).

-2-

sedentary jobs in the regional economy that he could perform.[2]  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.

On March 22, 2005, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 8).  The Council denied the request on October 4, 2005.  (Tr. 5-7).  The ALJ's decision thus became the final determination of the Commissioner.

On November 16, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff raises the following arguments in his motion: (1) the ALJ erred in concluding that plaintiff's heart ailment did not meet the requirements of listing 4.04B, 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 4.04B; (2) the ALJ erred in assessing plaintiff's credibility; and (3) the ALJ's disability determination is not supported by substantial evidence.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

---

[2]The ALJ made the following Residual Functional Capacity (RFC) determination:
> The claimant retains the residual functional capacity to perform a range of sedentary exertional work defined as follows: lifting and/or carrying no more than ten pounds at one time; occasionally lifting and/or carrying articles like docket files, ledgers and small tools; sitting for six hours during an eight hour workday; standing and/or walking for two hours during an eight hour work day; using hands and fingers for repetitive hand-finger actions; an environment relatively free of noxious fumes, gases, respiratory irritants, and extremes of temperature and humidity; twelve days off work per year; and two additional prescheduled five minute breaks during the work day.

(Tr. 17).

**III.  Legal Standards**

    **A.  Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  See also 42 U.S.C. § 423(d)(1)(A).  Further,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  See also 42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. §§ 404.1520, 416.920.  In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment."  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the

>performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

>Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "[t]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273. A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

**IV. Analysis**

    **A. Listing 4.04B**

Plaintiff first contends that his heart ailment meets the requirements of listing 4.04B and that the ALJ's conclusion to the contrary is not supported by substantial evidence. Listing 4.04B states the following:

> 4.04 *Ischemic heart disease* with chest discomfort associated with myocardial ischemia, as described in 4.00E3, while on a regimen of prescribed treatment.... With one of the following:
>
> B. Impaired myocardial function, documented by evidence...of hypokinetic, akinetic, or dyskinetic myocardial free wall or septal wall motion with left ventricular ejection fraction of 30 percent or less, and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, and resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

In order to establish disability at the third step of the disability evaluation process, the claimant must demonstrate that his impairment meets all of the criteria set forth in the applicable listing. See Hicks v. Commissioner of Social Security, 105 Fed.Appx. 757, 761 (6th Cir. 2004)("'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'")(quoting Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)).

There is no evidence in the record that plaintiff has ever experienced chest discomfort associated with myocardial ischemia.  Further, regardless of whether the other criteria of the listing are met, no physician concluded that exercise testing would present a significant risk to plaintiff.[3]  To the contrary, the record reflects that plaintiff underwent two exercise tests after his alleged disability onset date, one on June 26, 2001, and another on April 3, 2002.  (Tr. 209, 221).  Also, Dr. Mark O. Farber, a consulting physician, was asked to review plaintiff's medical records and provide an opinion as to whether he had an impairment of listing-level severity.  Dr. Farber determined that listing 4.02, the listing for chronic heart failure, was the most applicable listing and that plaintiff's condition did not meet the requirements of listing 4.02.  Apparently, Dr. Farber did not even consider listing 4.04B to be worthy of consideration.  (Tr. 341).  Based on the foregoing, the court concludes that there is substantial evidence in the record to support the conclusion that plaintiff's heart impairment did not meet all of the requirements of listing 4.04B.

## B.  Plaintiff's Credibility

The ALJ determined that plaintiff's "subjective complaints and allegations concerning the severity of his impairments are not reasonably consistent with the objective medical and other evidence of record."  (Tr. 14).  Plaintiff contends that the ALJ erred in reaching this conclusion.

---

[3]There are tests in the record showing ejection fractions of less than 30 percent.  (Tr. 195, 322).  Plaintiff's entire argument appears to rest on this fact.  However ejection fraction test results meeting the threshold level set forth in listing 4.04B are insufficient, standing alone, to establish disability under the listing.  Rather, all of the criteria of the listing must be bet.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  Further, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Id.

Plaintiff testified that his most significant problem was that he suffers from unrelenting fatigue which necessitates that he sleep and lay down frequently.  While plaintiff's complaints of fatigue may well have been genuine at the time of the hearing, the court cannot say that the ALJ erred in rejecting that portion of plaintiff's testimony.  There is no evidence in the record that plaintiff complained to any physician that he was experiencing such significant fatigue.  See, e.g., Essary v. Commissioner of Social Security, 114 Fed.Appx. 662, 665 (6th Cir. 2004)(ALJ properly rejected claimant's complaints regarding side effects of medication where claimant's medical records made no indication that she reported side effects to any of her physicians).  On March 18, 2003, Dr. Lillian Lai, one of plaintiff's treating physicians, indicated in her treatment notes that plaintiff was feeling perpetually tired, but that he otherwise had no complaints.  (Tr. 285).  There is nothing in Dr. Lai's notes regarding the severity of plaintiff's fatigue.[4]  On January 22, 2003, Dr. Louti Sami Aboussouan examined plaintiff based upon complaints that he

---

[4]There is evidence indicating that plaintiff experiences fatigue upon exertion, but the ALJ accommodated this limitation by limiting plaintiff to sedentary work involving lifting of no more than 10 pounds and working in a seated position for the majority of the day.

-8-

was experiencing insomnia. Dr. Aboussouan noted that plaintiff woke up feeling unrefreshed and that he sometimes took an hour-long nap during the day, but that he "[did] not have any symptoms of daytime excessive sleepiness." (Tr. 287). Dr. Aboussouan found plaintiff to be "awake, alert, oriented x 3." Id. There are otherwise no references in the medical record to fatigue or the need to nap or lie down. None of plaintiff's treating physicians recommended that he lie down or nap, mentioned a need to lie down and nap due to his heart ailment, or identified a need to lie down and nap as a factor limiting his ability to work or engage in activities of daily living. See, e.g., Leffel v. Commissioner of Social Security, 30 Fed.Appx. 459, 461 (6th Cir. 2002)(ALJ properly rejected claimant's allegation that he needed to lie down frequently where medical record contained no reference to such a limitation).

Further, there is other evidence in the record inconsistent with plaintiff's testimony regarding the extent of his limitations. On May 11, 2001 – plaintiff's amended onset date – Dr. John O'Connell, one of plaintiff's treating physicians, noted that plaintiff "has no complaints, no shortness of breath, no chest pain, no orthopnea, no pedal edema, no palpitations, no dizziness," and that "the only thing bothering him at present is his gallbladder problem." (Tr. 193). On May 18, 2001, Dr. O'Connell noted that plaintiff "still denies that he has any limitations whatsoever from this problem. (Tr. 202). Dr. Aboussouan noted on January 22, 2003, that plaintiff was "active. He is able to walk 4-5 blocks....No history of chest pain, palpitation, fever, chills, or wheeze." (Tr. 286). On May 18, 2003, Dr. Lai indicated that plaintiff "had no complaints other than feeling perpetually tired." (Tr. 285). In addition, on May 21, 2002, Dr. Pritpal Puri noted that "[a]t the present time there is no clinical evidence of congestive heart

failure." (Tr. 224). Thus, there is evidence indicating that plaintiff was relatively asymptomatic.

For the reasons stated above, the court concludes that the ALJ had an adequate basis in the record to discount plaintiff's testimony regarding the extent of his limitations.

### C.  Residual Functional Capacity

#### 1.  Treating Physician Opinions

Plaintiff also objects to the ALJ's RFC assessment and to the ALJ's determination that he remains capable of performing sedentary work that exists in significant numbers in the State of Michigan. Plaintiff contends that the opinions of his treating physicians, coupled with the testimony of the VE, demonstrate that he is incapable of performing even sedentary work and that the ALJ erred in finding to the contrary.

The ALJ determined that plaintiff had the following RFC:

> The claimant retains the residual functional capacity to perform a range of sedentary exertional work defined as follows: lifting and/or carrying no more than ten pounds at one time; occasionally lifting and/or carrying articles like docket files, ledgers and small tools; sitting for six hours during an eight hour workday; standing and/or walking for two hours during an eight hour work day; using hands and fingers for repetitive hand-finger actions; an environment relatively free of noxious fumes, gases, respiratory irritants, and extremes of temperature and humidity; twelve days off work per year; and two additional prescheduled five minute breaks during the work day.

(Tr. 17). The ALJ incorporated this RFC assessment into one of the hypotheticals he posed to the VE at the hearing. The VE testified that a person of plaintiff's age, education, and work experience, with the RFC indicated by the ALJ, could do hand packaging, inspection, assembly,

and surveillance monitor work, and that 8,300 such jobs existed in Michigan. (Tr. 383-84).[5] The ALJ relied upon this testimony in concluding that plaintiff was not disabled. Plaintiff contends that the RFC assessment and hypothetical were inaccurate and, therefore, that the VE's testimony does constitute substantial evidence in support of the ALJ's disability determination.

Plaintiff's argument is based upon the opinions of Drs. O'Connell and Lai, both of whom filled out medical source statements in which they indicated, among other things, that plaintiff could lift less than ten pounds and that he was limited to walking and/or standing less than two hours and sitting less than six hours in an eight-hour workday. (Tr. 249-51, 253-55). At the hearing, plaintiff's counsel asked the VE whether a person with such standing/walking/sitting limitations, as well as the other limitations identified by the ALJ, could perform the sedentary jobs the VE identified in response to the ALJ's hypothetical. The VE testified that all sedentary employment would be precluded if plaintiff was limited to sitting less than six hours during the workday.[6] (Tr. 385); see also Social Security Ruling (SSR) 96-9p, 1996 WL 374185 (S.S.A).[7]

---

[5]The VE did not actually give any testimony as to the geographic region he was referring to. The ALJ indicated in his opinion that the VE was referring to the State of Michigan. Plaintiff has not objected to this finding.

[6]The VE was apparently of the belief that the lifting, walking, and standing limitations proposed by counsel would not eliminate any of the jobs he previously identified as within plaintiff's RFC.

[7]SSR 96-9p provides, in relevant part:
> In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours in an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary base will be eroded. The extent

Plaintiff contends, based upon this testimony, that if the ALJ had accorded appropriate weight to the opinions of Drs. O'Connell and Lai regarding plaintiff's ability to sit, a finding that plaintiff is disabled would have been warranted.

Plaintiff's argument invokes the treating physician rule, which provides that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997). Section 404.1527(d)(2) of the regulations further provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). However, as the regulation suggests, an ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record. See Walters, 127 F.3d at 530.

Neither Dr. O'Connell nor Dr. Lai provided any specific explanation in their respective medical source statements as to why they believed plaintiff could not sit for six hours out of an eight-hour workday. There is nothing in their treatment notes or other reports indicating that plaintiff's condition affected his ability to sit for extended periods or that he complained of being

---

of the limitation should be considered in determining whether the
individual has the ability to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at * 6.

unable to sit for extended periods. Further, the court can find no other reference in the record to plaintiff having difficulty sitting for long periods of time or having complained to any other physician that he had such difficulties. Plaintiff did not indicate in his application questionnaires that he had difficulty sitting, nor did he testify that it was difficult for him to sit for long periods of time. There is simply nothing in the record to suggest that plaintiff is incapable of sitting for approximately six hours per day. The opinions of Drs. O'Connell and Lai are not well-supported in this respect.

Further, there is evidence in the record that contradicts their assessment of plaintiff's sitting limitations. All three consulting physicians who examined plaintiff and/or his medical records opined that plaintiff could meet the sitting requirements of sedentary work. Dr. Puri determined that plaintiff's impairment did not affect his ability to sit at all. (Tr. 245). A second consulting physician indicated in an RFC assessment form that plaintiff could sit for approximately six hours in an eight-hour workday. (Tr. 214). Dr. Farber also concluded that plaintiff could sit for approximately six hours in an eight-hour workday. (Tr. 346).

For the reasons stated above, the court concludes that the opinions of Drs. O'Connell and Dr. Lai regarding plaintiff's sitting restrictions are not well-supported and are inconsistent with other substantial evidence in the record. Accordingly, the ALJ was not bound under the treating physician rule to give controlling weight to those opinions.

### 2. Postural Limitations

While the ALJ made no error in assessing plaintiff's sitting restrictions, the ALJ's RFC assessment and, consequently, the hypothetical he posed to the VE, do not accurately describe all

of plaintiff's limitations. As discussed below, the ALJ failed to give appropriate consideration to evidence indicating that plaintiff has postural limitations that may affect his ability to perform unskilled, sedentary work.

There are five medical source statements in the record regarding plaintiff's functional limitations – those of Dr. O'Connell, Dr. Lai, Dr. Puri, Dr. Farber, and the unidentified consultant. While there are certain discrepancies in their respective reports, all five physicians found that plaintiff had postural limitations, i.e., a restricted ability to climb (ramps/stairs/ladders/ropes/scaffolding), balance, kneel, crouch, crawl, and stoop. Dr. O'Connell determined that plaintiff could perform each of these activities "occasionally," which is defined in the medical source statement as "occurring from very little up to one-third of an 8-hour workday (cumulative, not continuous)." (Tr. 250). Dr. Lai determined that plaintiff should never climb, kneel, crouch, and crawl, and that he should balance only occasionally. (Tr. 254). Dr. Puri concluded that plaintiff should never climb and that he could occasionally balance, kneel, crouch, crawl, or stoop. (Tr. 245). Dr. Farber determined that plaintiff could perform all of these activities on a frequent to occasional basis. (Tr. 346). Finally, the other consultant determined that plaintiff could only occasionally climb, balance kneel, crouch, and crawl. (Tr. 215).

Despite the fact that the treating and non-treating sources all agreed that plaintiff had postural limitations, the ALJ failed to include any such limitations in the RFC assessment or the hypothetical he posed to the VE. Moreover, the ALJ provided no explanation as to why he declined to do so. Given the fact that the treating and non-treating sources unanimously agreed

that plaintiff had postural limitations, it was error for the ALJ to fail to include any such limitations in the RFC assessment and hypothetical.

The ALJ's error in this regard cannot be deemed harmless. As indicated in SSR 96-9p, unskilled, sedentary work may require the performance of at least some of these postural activities, and an inability or limited ability to perform such activities may substantially reduce the occupational base:

> Postural limitations related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. In the SCO, "balancing" means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases.
>
> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96-9p, 1996 WL 374185 at *7-8. If the ALJ had included postural limitations in the hypothetical he posed to the VE, the number and type of jobs falling within plaintiff's RFC may have been significantly eroded such that a finding that plaintiff is disabled would have been warranted. That is a question that cannot be decided on the present record. Accordingly, this matter must be remanded to the Commissioner pursuant to sentence four of § 405(g) for further proceedings.[8] The ALJ must determine the extent of plaintiff's postural limitations, provide an explanation as to the decision reached, and obtain additional testimony from a VE to determine whether there are jobs plaintiff can perform with the addition of the postural limitations.

## V.  Conclusion

For the reasons stated above, the court recommends that plaintiff's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, that the Commissioner's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, and that the matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this report and recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

---

[8]There are two types of remands under § 405(g), a sentence four remand and a sentence six remand. A sentence six remand is a pre-judgment remand by which the court orders the Commissioner to consider material evidence that was not part of the administrative record. A sentence four remand involves the entry of a final judgment reversing the Commissioner's decision and remanding the matter for correction of errors committed in adjudicating the claim. See Faucher v. Secretary of Health of Human and Services, 17 F.3d 171, 175 (6th Cir. 1994).

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

    Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                    S/Virginia M. Morgan
                                                    VIRGINIA M. MORGAN
                                                    UNITED STATES MAGISTRATE JUDGE

Dated: December 15, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 15, 2006, by electronic and/or ordinary mail.

                                                    S/Vee Sims
                                                    Case Manager, (313) 234-5210